IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| SARAH GRAVES,<br>Plaintiff,<br><br>v.<br><br>COMPASS GROUP USA, INC. d/b/a CANTEEN,<br><br>Serve:<br><br>Corporation Service Company<br>As Registered Agent of Compass Group USA, Inc.<br>2626 Glenwood Avenue, Suite 550<br>Raleigh, NC 27608<br><br>Courtesy Copy to:<br><br>Adrian Meredith<br>President of Compass Group USA, Inc.<br>2400 Yorkmont Road<br>Charlotte NC 28217<br><br>Defendants. | <u>COMPLAINT FOR DAMAGES AND REINSTATEMENT</u><br><br><u>JURY DEMAND ENDORSED HEREIN</u> |

Plaintiff Sarah Graves ("Graves"), by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

**NATURE OF THE ACTION**

1. This is an action for age discrimination, disability discrimination, failure to accommodate, retaliation, and wrongful discharge arising out of Defendant's unlawful employment practices.

2. Defendant discriminated against Plaintiff because of her age and disability, denied her reasonable accommodations, retaliated against her after she complained of discrimination and unsafe workplace conduct, and ultimately terminated her employment.

3. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

## PARTIES

4. Plaintiff Sarah Graves is a citizen and resident of Alamance County, North Carolina.

5. Plaintiff was born on April 7, 1974, and was over forty years old at all times relevant to this action.

6. Defendant Compass Group USA, Inc., doing business as Canteen ("Compass" or "Defendant"), is a foreign corporation authorized to conduct business in North Carolina.

7. Defendant maintains offices and conducts substantial business activities within North Carolina, including the facility located at 100 Maple Lane, Mebane, North Carolina, where Plaintiff worked.

8. At all relevant times, Defendant employed substantially more than fifteen employees and was an "employer" as that term is defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111(5).

9. At all relevant times, Defendant employed substantially more than twenty employees and was an "employer" within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §630(b).

## JURISDICTION AND VENUE

10. This Court has federal-question jurisdiction pursuant to 28 U.S.C. §1331.

11. This Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. §1343 and 42 U.S.C. §12101 et seq.

12. This Court has jurisdiction over Plaintiff's ADEA claims pursuant to 29 U.S.C. §621 et seq.

13. The Court has supplemental jurisdiction over Plaintiff's North Carolina law claims pursuant to 28 U.S.C. §1367.

14. Venue is proper in the Middle District of North Carolina because the events giving rise to Plaintiff's claims occurred within this District.

## EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

15. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 18, 2025, alleging age discrimination, disability discrimination, and retaliation in violation of the ADEA and the ADA.

16. Plaintiff's EEOC Charge was assigned number 430-2025-04053.

17. On June 24, 2026, the EEOC issued Plaintiff a Notice of Right to Sue.

18. Plaintiff received the EEOC's Notice of Right to Sue on or about June 24, 2026.

19. Plaintiff is filing this Complaint within ninety days of receipt of the Notice of Right to Sue.

20. Plaintiff has satisfied all administrative prerequisites to filing this action under the ADEA and the ADA.

## FACTS

**Background and Employment**

21. Plaintiff Sarah Graves is an African American woman.

22. Defendant hired Plaintiff in approximately November 2024 as a Cook at Defendant's facility located at 100 Maple Lane, Mebane, North Carolina 27302.

23. Plaintiff's job duties included food preparation and related duties.

24. Plaintiff was paid at an hourly rate of eighteen dollars per hour.

25. Plaintiff typically worked approximately thirty-two hours per week.

26. Plaintiff's employment was subject to a ninety-day probationary period.

27. Plaintiff was qualified for her position.

28. Plaintiff satisfactorily performed her duties and met Defendant's legitimate performance expectations.

29. Except as alleged herein, Defendant never informed Plaintiff that her performance rendered her unqualified for continued employment.

**Plaintiff's Disability**

30. Plaintiff has been diagnosed with arthritis, a condition from which she has suffered since approximately 2000.

31. Plaintiff's arthritis significantly impairs her ability to stand, walk, and perform other major life activities.

32. Plaintiff disclosed her medical conditions, including arthritis and her injured toe, during the hiring process.

33. During the course of her employment with Defendant, Plaintiff also suffered injuries to her toe and later injured her back and neck in a fall, which further impaired her ability to stand and walk.

34. Defendant had actual knowledge of Plaintiff's physical impairments.

**Reasonable Accommodation Requests and Denial**

35. Due to her medical conditions, Plaintiff requested reasonable accommodations, including additional breaks and flexibility to address her physical limitations.

36. Defendant initially granted Plaintiff's requested accommodations.

37. After Plaintiff returned from medical leave, Defendant withdrew previously approved accommodations without explanation.

38. Plaintiff made verbal requests to resume the breaks, but Defendant did not respond to her requests.

39. Plaintiff renewed her requests for accommodation.

40. Defendant denied or ignored Plaintiff's requests.

41. Defendant failed to engage in a meaningful interactive process with Plaintiff regarding her need for reasonable accommodations.

42. Plaintiff remained able to perform the essential functions of her position with reasonable accommodation.

**Age-Based Treatment and Discrimination**

43. On or about February 3, 2025, Plaintiff discovered that Defendant was paying her significantly less in bonuses than her younger coworkers for performing substantially similar work.

44. Plaintiff received only approximately two hundred fifty dollars as a bonus.

45. Younger coworkers in their twenties and thirties received five-hundred-dollar bonuses for performing the same job duties as Plaintiff.

46. Plaintiff worked just as hard and handled the same responsibilities as her younger coworkers.

47. Plaintiff was fifty years old at the time of her termination.

48. Plaintiff's supervisor, Mike Pruitt, was approximately forty-five years old.

49. Defendant treated Plaintiff less favorably than younger employees based on her age and disability.

**Protected Activity and Discriminatory and Retaliatory Treatment**

50. On or about January 16, 2025, Plaintiff was assigned to work a third shift.

51. During that shift, Plaintiff observed coworkers drinking alcohol and using drugs on the job.

52. Plaintiff reasonably believed that the conduct engaged her, other employees and created an unsafe working condition.

53. Plaintiff called her supervisor, Mike Pruitt, at approximately 3:00 a.m. to report the unsafe working conditions.

54. Plaintiff contacted every required person before leaving the workplace due to the dangerous environment.

55. Rather than investigate her concerns, management accused Plaintiff of wrongdoing, Supervisor Mike Pruitt accused Plaintiff of "walking off the job."

56. On or about January 16, 2025, Supervisor Pruitt purported to terminate Plaintiff's employment.

57. Supervisor Pruitt later returned Plaintiff to her position.

58. On or about January 28, 2025, Plaintiff received a text message from Supervisor Mike Pruitt.

59. Plaintiff has a copy of this discriminatory message.

60. On or about January 28, 2025, Plaintiff received a text message from Natalie.

61. Plaintiff has a copy of this discriminatory message.

62. The messages Plaintiff received from Supervisor Pruitt and Natalie contained discriminatory and harassing content.

63. Supervisor Mike Pruitt is Caucasian.

64. In mid-February 2025, Plaintiff again complained regarding discrimination, and unfair treatment to District Manager Judy including ongoing issues regarding age discrimination, disability discrimination, accommodation issues, and Supervisor Pruitt's conduct.

65. Plaintiff explained to Judy that she felt unsafe communicating with Supervisor Pruitt due to his earlier harassment.

66. Judy dismissed Plaintiff's concerns and insisted that Plaintiff speak with Supervisor Pruitt anyway.

67. During the conversation with Judy, Plaintiff, frustrated by Judy's dismissal of her concerns, said the word "damn," which was not directed at anyone.

68. Judy warned Plaintiff to be careful with her language.

69. Plaintiff pointed out that other younger employees frequently used profanity, yet Defendant had never disciplined them for their language.

70. Defendant tolerated similar or worse language from younger workers.

**Termination**

71. In or around February 2025, Plaintiff complained to management regarding age discrimination, disability discrimination, unequal treatment, and Defendant's refusal to adequately address her concerns regarding accommodations and workplace conduct.

72. During those discussions, Plaintiff specifically noted that substantially younger employees routinely used profanity and other inappropriate workplace language without discipline, while Defendant subjected Plaintiff to heightened scrutiny.

73. During a conversation with District Manager Judy, Plaintiff used the word "damn" in expressing frustration regarding Defendant's treatment of her.

74. The statement was not directed at any individual and was materially less severe than language Defendant routinely tolerated from younger employees.

75. Approximately one week after Plaintiff complained about age discrimination, disability discrimination, unequal treatment, and workplace issues, Defendant informed Plaintiff by text message that she was not to return to work.

76. On or about February 17, 2025, Natalie sent Plaintiff a text message instructing her not to report to work, thereby terminating her employment.

77. Defendant treated Plaintiff's isolated use of the word "damn" as a terminable offense while routinely permitting younger employees to engage in similar or more serious conduct without discipline.

78. Defendant failed to provide Plaintiff with a clear, legitimate, and consistent explanation for her termination and did not provide written documentation identifying the basis for the discharge at the time of termination.

79. Despite terminating Plaintiff for alleged misconduct, Defendant failed to conduct a meaningful investigation into the circumstances surrounding the alleged offense.

80. Defendant failed to follow its own disciplinary practices and procedures and did not utilize progressive discipline before terminating Plaintiff.

81. During her employment, Plaintiff received only one write-up during her probationary period and was never advised that her employment was in jeopardy.

82. Defendant treated younger employees more favorably than Plaintiff with respect to discipline, workplace rules, compensation, and continued employment.

83. Defendant's asserted reasons for Plaintiff's termination were false, inconsistent, exaggerated, and pretextual.

84. Plaintiff's age, disability, requests for reasonable accommodation, complaints of discrimination, and complaints regarding unsafe workplace conditions were motivating factors in Defendant's decision to terminate her employment.

85. Defendant's conduct was intentional, willful, malicious, and undertaken with reckless disregard for Plaintiff's federally protected rights.

**Damages**

86. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff lost wages, employment benefits, future earnings, and suffered emotional distress, humiliation, embarrassment, and other compensable damages.

## COUNT I — AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

87. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

88. At all times relevant to this Complaint, Plaintiff was at least forty years old and therefore a member of a protected class under the ADEA.

89. At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of the ADEA and employed fifteen or more employees.

90. Plaintiff was qualified for her position as Cook and satisfactorily performed her job duties.

91. Defendant subjected Plaintiff to adverse employment actions, including paying her lower bonuses than younger employees, retaliating against her for reporting discrimination, and terminating her employment.

92. Defendant's adverse employment actions were taken because of Plaintiff's age.

93. Younger employees in their twenties and thirties who performed the same job duties as Plaintiff received more favorable treatment, including higher bonuses.

94. Plaintiff's age was the but-for cause of Defendant's adverse actions.

95. Defendant's stated reasons for terminating Plaintiff were pretextual.

96. Defendant discriminated against Plaintiff based on her age in violation of 29 U.S.C. § 623.

**COUNT II — DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

97. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

98. At all times relevant to this Complaint, Plaintiff had a disability within the meaning of the ADA in that she had a physical impairment, specifically arthritis and injuries to her toe, back, and neck, that substantially limited one or more major life activities, including standing and walking.

99. At all times relevant to this Complaint, Defendant was Plaintiff's employer within the meaning of the ADA and employed fifteen or more employees.

100. Plaintiff was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of her position as Cook.

101. Defendant knew of Plaintiff's disability because Plaintiff disclosed her medical conditions during the hiring process and requested accommodations.

102. Defendant subjected Plaintiff to adverse employment actions, including denying her requested accommodations after initially granting them and terminating her employment.

103. Defendant's adverse employment actions were taken because of Plaintiff's disability.

104. Defendant discriminated against Plaintiff based on her disability in violation of 42 U.S.C. § 12112.

## **COUNT III — FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

105. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

106. Plaintiff had a disability within the meaning of the ADA.

107. Defendant knew of Plaintiff's disability and the limitations it imposed on her ability to stand and walk.

108. Plaintiff requested reasonable accommodations, including breaks to tend to her injured toe, which would have enabled her to perform the essential functions of her position.

109. Defendant initially granted Plaintiff's accommodation request but later revoked the accommodations without explanation.

110. Plaintiff made verbal requests to resume the accommodations, but Defendant did not respond.

111. Defendant failed to engage in an interactive process with Plaintiff to determine an appropriate reasonable accommodation.

112. The requested accommodations would not have imposed an undue hardship on Defendant's operations.

113. Defendant's failure to provide reasonable accommodations to Plaintiff violated 42 U.S.C. § 12112(b)(5)(A).

**COUNT IV — RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

114. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

115. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations for her disability and by complaining about disability discrimination to District Manager Judy.

116. Defendant was aware of Plaintiff's protected activity.

117. Following Plaintiff's protected activity, Defendant took adverse employment actions against Plaintiff, including revoking her accommodations and terminating her employment.

118. Defendant's adverse employment actions were causally connected to Plaintiff's protected activity.

119. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 42 U.S.C. § 12203.

**COUNT V — RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

120. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

121. Plaintiff engaged in protected activity under the ADEA by complaining about age discrimination to District Manager Judy, including Defendant's practice of paying her lower bonuses than younger employees.

122. Defendant was aware of Plaintiff's protected activity.

123. Following Plaintiff's protected activity, Defendant took adverse employment actions against Plaintiff, including terminating her employment.

124. Defendant's adverse employment actions were causally connected to Plaintiff's protected activity.

125. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 29 U.S.C. § 623(d).

**COUNT VI — WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAORLINA PUBLIC POLICY (DISABILITY AND AGE DISCRIMINATION)**

126. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

127. North Carolina public policy prohibits discrimination on the basis of disability.

128. North Carolina public policy prohibits discrimination on the basis of age.

129. Defendant terminated Plaintiff because of her disability and accommodation requests.

130. Defendant terminated Plaintiff because of her age.

131. Defendant's conduct violated the public policy of North Carolina embodied in N.C. Gen. Stat. §143-422.2.

**COUNT VII-WRONGFUL TERMINATION IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY IN RETALIATION FOR REPORTING UNSAFE WORKING CONDITIONS**

132. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133. On or about January 16, 2025, Plaintiff engaged in protected activity by reporting to Supervisor Mike Pruitt that coworkers were drinking alcohol and using drugs on the job, creating unsafe working conditions.

134. Plaintiff's report of unsafe working conditions was protected activity under federal and North Carolina law.

135. Defendant was aware of Plaintiff's protected activity because Plaintiff made the report directly to her supervisor.

136. Following Plaintiff's report, Supervisor Pruitt accused Plaintiff of "walking off the job" and purported to terminate her employment on January 16, 2025.

137. Although Supervisor Pruitt later returned Plaintiff to her position, Defendant ultimately terminated Plaintiff's employment on February 17, 2025.

138. Defendant's adverse employment actions, including the initial purported termination and the final termination on February 17, 2025, were causally connected to Plaintiff's protected report of unsafe working conditions.

139. Defendant retaliated against Plaintiff for engaging in protected activity in violation of North Carolina public policy.

## DEMAND FOR RELIEF

Plaintiff Sarah Graves respectfully requests that this Court enter judgment in her favor and against Defendant Compass Group USA, Inc. d/b/a Canteen and award the following relief:

A. A declaratory judgment that Defendant's conduct violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the public policy of the State of North Carolina;

B. Reinstatement to her former position, seniority, status, compensation, and benefits, or alternatively an award of front pay in lieu of reinstatement;

C. Back pay, lost wages, lost bonuses, lost compensation, lost employment benefits, and all other economic damages resulting from Defendant's unlawful conduct, in an amount to be determined at trial;

D. Front pay and compensation for future economic losses, including future lost wages, benefits, and earning capacity;

E. Compensatory damages for emotional distress, humiliation, embarrassment, mental anguish, inconvenience, loss of enjoyment of life, reputational harm, and other non-economic damages in an amount to be determined at trial;

F. Liquidated damages for Defendant's willful violations of the Age Discrimination in Employment Act pursuant to 29 U.S.C. § 626(b);

G. Punitive damages pursuant to 42 U.S.C. § 1981a and all other applicable law for Defendant's intentional, malicious, willful, and reckless disregard of Plaintiff's federally protected rights;

H. Reasonable attorneys' fees, litigation expenses, expert witness fees, and costs pursuant to 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e-5(k), 29 U.S.C. § 626(b), and all other applicable provisions of law;

I. Prejudgment and post-judgment interest as allowed by law;

J. Equitable and injunctive relief necessary to remedy Defendant's unlawful conduct and prevent further discrimination and retaliation;

K. Removal of any negative, retaliatory, discriminatory, or inaccurate disciplinary and termination references from Plaintiff's personnel records and employment files;

L. All damages and remedies available under North Carolina law, including damages arising from Plaintiff's state-law wrongful discharge claims;

M. Such other legal, equitable, declaratory, injunctive, or monetary relief as the Court deems just, proper, and necessary to fully compensate Plaintiff and remedy Defendant's unlawful conduct.

This the 18th day of September, 2026.

Respectfully submitted,

/s/ *Janelle Lyons*

Janelle Lyons (35421)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
6135 Park South Drive
Suite 590
Charlotte, NC 28210
Phone: (980) 301-0755
Fax: (216) 291-5744
Email: janelle.lyons@spitzlawfirm.com

*Attorney for Plaintiff Sarah Graves*

**JURY DEMAND**

Plaintiff Demare Moore demands a trial by jury by the maximum number of jurors permitted.

/s/ *Janelle Lyons* (35421)